No. 2--03--0486

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of  Du Page County.

)

Plaintiff-Appellee, )

)

v. ) No. 02--DV--1138

)

ANTHONY E. VICTORS, ) Honorable

) Elizabeth W. Sexton,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Anthony E. Victors, was charged by complaint on July 12, 2002, with committing the offense of domestic battery (720 ILCS 5/12--3.2(a)(2) (West 2002)).  The complaint alleged that on July 12, 2002, he knowingly made physical contact of a provoking nature with the victim, Veronica DelValle.  Following a bench trial, defendant was found guilty and sentenced to one year of probation with conditions, including 130 days of county jail time, credit for time served, and fines totaling $110.  Defendant timely appeals, contending that (1) the record fails to establish that he validly waived his right to a trial by jury; (2) the trial court erroneously admitted DelValle's hearsay statements under the "excited utterance" exception to the hearsay rule; and (3) his $100 fine for the domestic violence conviction should be held to be satisfied by $5-per-day credit for the  time he spent in custody.  We reverse and remand.

The trial court set the matter for trial on February 13, 2003.  On February 13, 2003, the trial court continued the scheduled jury trial to February 18, 2003.  On the morning of February 18, the attorneys appeared before the trial court and answered ready for trial.  When the trial court inquired  whether the trial would be a "jury or bench," defense counsel replied that it would be a "Jury."  The trial court then told the attorneys to return at 1:30 p.m.  Later that morning, however, defense counsel returned to the courtroom and stated to the trial court, "Your Honor, I had a chance to speak with my client.  He'd like to go with a bench trial."  

When the case was called at 1:30, the trial court conducted a bench trial.  The State called as witnesses Carl Doerr and his wife, Maria.  The Doerrs testified that on July 11, 2002, they were staying in room 108 of the Extended StayAmerica in Downers Grove.  They knew that defendant and DelValle, along with her baby, were occupying room 106.

The Doerrs testified that at approximately 12:30 a.m., they heard a disturbance coming from room 106.  The head of their bed was against the wall that separated their room from room 106.  The Doerrs then heard a "slapping-type" sound, followed by several "thumping" sounds against the common wall.  They also heard defendant speak in a loud, angry tone, and Carl Doerr heard defendant call DelValle a "little ignorant bitch."  The Doerrs testified that they had spoken to both defendant and DelValle in the past and thus recognized their voices.  Defendant also said to DelValle  "just because you have a kid doesn't mean you know anything in life."  The Doerrs heard DelValle reply "Please stop."  Carl Doerr then called the police and spoke with the police upon their arrival. The Doerrs later saw DelValle in the hallway, whom they described as appearing disheveled.  Carl Doerr testified that DelValle had a red mark on her neck.

The only other witness to testify at trial was Downers Grove police officer Robert McMahon.  McMahon testified that he was on duty on July 11, 2002, at approximately 12:30 a.m., when he responded to a report of a domestic battery at the Extended StayAmerica.  When McMahon arrived, he spoke with Carl Doerr for approximately three to five minutes before knocking on the door of room 106.  Defendant opened the door and McMahon informed defendant that the police had received a complaint of an argument and asked what was happening.  McMahon entered the room and spoke with defendant while a backup officer escorted DelValle to the hallway.  As DelValle passed McMahon, he observed that she was crying.

McMahon spoke with defendant while the backup officer spoke with DelValle.  McMahon testified that defendant told him that he and his girlfriend had an argument.  After approximately five minutes, McMahon spoke with DelValle.  He testified that her demeanor was the same as when he had first seen her; she was crying, upset, and "frightful in her face."  He did not observe any bruises or injuries on her.

The State sought to elicit from McMahon the statements DelValle made on the scene about what had happened.  Defense counsel objected, based on hearsay.  The State responded that the statements were admissible under the "excited utterance" exception to the rule against hearsay.  Defense counsel objected, arguing that the State had not laid the requisite foundational elements to establish the "excited utterance" exception because there was no evidence presented to establish a "triggering event" that brought about the excited utterances.  The trial court allowed the testimony of McMahon, but reserved its ruling on the admissibility of the statements.

Officer McMahon testified that he advised DelValle that the police had received a report of a domestic situation, and he asked her what happened.  According to McMahon, DelValle told him that she and defendant had begun arguing after defendant's former wife or girlfriend had called.  DelValle stated that the argument escalated when defendant pushed her head against a door and pulled her hair.  Defendant then began punching her in the lower back with his fist.  When DelValle moved to the couch, defendant began choking her.  Defendant then stopped and apologized.  DelValle signed a complaint and McMahon placed defendant under arrest.  DelValle did not testify.

Both sides rested, and the trial court granted the attorneys until the next morning to research the issue of the admissibility of the purported "excited utterances."  The next morning, the trial court heard arguments on defendant's continuing objection to McMahon's testimony about DelValle's alleged statements.  Defense counsel argued that the statements were not excited utterances because McMahon was the second officer with whom DelValle had spoken.  The trial court ruled that the statements were admissible as excited utterances.

Following closing arguments, the trial court found defendant guilty of domestic battery.  The record reflects that a signed jury waiver form was filed with the circuit clerk on the afternoon of February 19.  Defendant timely appeals following the trial court's denial of his posttrial motion. 

On appeal, defendant first contends that the trial court erred when it conducted a bench trial on the domestic battery complaint when the record failed to establish that he had knowingly and understandingly waived his right to a jury trial.  In support of this contention, defendant argues that, when his attorney informed the trial court that defendant wished to proceed with a bench trial, it was done out of his presence and, further, it was done on the day his jury trial was scheduled to begin.  Defendant also argues that he was never admonished by the trial court that he was giving up the right to a jury trial.  Further, defendant argues that, although he did sign a jury waiver form, that form was not filed until after the conclusion of the bench trial and did not in and of itself constitute a knowing and understanding waiver of his right to a jury trial.

We note that defendant is raising this issue for the first time.  Usually, errors not objected to during trial or raised in a posttrial motion are considered waived.  
People v. Enoch
, 122 Ill. 2d 176,  186 (1988).  However, under Supreme Court Rule 615(a), this court may review plain errors affecting substantial rights, even if those errors were not identified during trial or presented in a posttrial motion.  134 Ill. 2d R. 615(a).  The right to a trial by jury is a fundamental right.  U.S. Const., amend. VII.  The question of a knowing waiver of the fundamental right to a jury trial is considered under the plain error doctrine.  
In re R.A.B.
, 197 Ill. 2d 358, 363 (2001).  Whether a defendant knowingly and understandingly waived his right to a jury trial is a question of law.  
R.A.B.
, 197 Ill. 2d at 362.  Therefore, our standard of review is 
de novo
.  
R.A.B.
, 197 Ill. 2d at 362.

 In a criminal case, a defendant is entitled to a trial by jury unless that right is "understandingly waived by defendant in open court."  725 ILCS 5/103--6 (West 2002).  Further, in criminal cases, jury waivers should be in writing.  725 ILCS 5/115--1 (West 2002).  However, the failure to file a written jury waiver does not require reversal so long as the defendant's waiver was made in accordance with section 103--6 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/103--6 (West 2002)).  Thus, under the Code, a defendant waives his or her right to a jury trial only if the waiver is made understandingly and in open court.  
People v. Scott
, 186 Ill. 2d 283, 285 (1999), citing 
People v. Tooles
, 177 Ill. 2d 462, 468 (1997).  When it comes to an oral waiver, a knowing and understanding waiver can be found only if, in the defendant's presence and without an objection from the defendant, "defense counsel expressly advises the court" that the defendant desires to proceed by way of a bench trial.  
People v. Eyen
, 291 Ill. App. 3d 38, 41 (1997).  The law imposes no requirement that the record affirmatively show that the trial court advised a defendant of his or her  right to a jury trial or that he or she was advised of the consequences of his or her waiver.  
People v. Frey
, 103 Ill. 2d 327, 332 (1984).  At the minimum, though, our supreme court has stated, there can never be a valid jury waiver where the defendant was not present in open court "when a jury waiver, written or otherwise, was at least discussed."  
Scott
, 186 Ill. 2d at 285.  Finally, our supreme court has held that a written jury waiver, standing alone,  is insufficient to prove a valid waiver of the right to a jury trial.  
Scott
, 186 Ill. 2d at 285.

Defendant has filed a motion with this court to cite additional authority, and we grant the motion.  The additional authority is the recently decided case of 
People v. Elders
, 349 Ill. App. 3d 573 (2004).  In 
Elders
,  the defense counsel, in various pretrial hearings where the defendant was not present, told the trial court that the trial would be a bench trial.  At a later hearing, where the defendant was present, defense counsel stated, " 'This is Kenneth Elders before the Court.  He is set for a bench trial today.' "  
Elders
, 349 Ill. App. 3d at 575.  The defendant did not object.  On the day the case was scheduled for trial, the case proceeded directly to a bench trial without any mention of jury waiver.  The trial court found the defendant guilty.  After making its findings, the trial court realized the defendant had not signed a jury waiver.  Defense counsel told the trial court that the defendant indicated he wanted to sign a jury waiver, and the defendant signed a jury waiver in open court.  
Elders
, 349 Ill. App. 3d at 576-77.

The reviewing court reversed, determining that the one reference made to a bench trial when the defendant was present at the pretrial hearing did not constitute a sufficient discussion of a jury waiver or demonstrate that the defendant knew he could choose between a jury or a bench trial.  
Elders
, 349 Ill. App. 3d at 584.  The reviewing court stated that the defendant was not given an opportunity to demand or waive a jury trial.  
Elders
, 349 Ill. App. 3d at 584.  With respect to the signed jury waiver, which was completed after the conclusion of the bench trial, the court relied on 
Scott
, 186 Ill. 2d 283, where the written jury waiver was filed but found to be of no importance because of other factors involved in the case.  The 
Elders
 court particularly focused on the lack of any discussion with respect to a jury waiver in the defendant's presence.  
Elders
, 349 Ill. App. 3d at 583-84. 

We also find instructive the case of 
People v. Eyen
, 291 Ill. App. 3d 38 (1997), in which defense counsel asked for a bench trial at a pretrial hearing when the defendant was not present.  The question of the defendant's jury waiver was not raised by the trial court or the parties on the day of trial.  
Eyen
, 291 Ill. App. 3d at 40.  The defendant also never signed a jury waiver.  
Eyen
, 291 Ill. App. 3d at 41.
  
On appeal, the reviewing court found that the defendant did not validly waive his right to a jury trial.  
Eyen
, 291 Ill. App. 3d at 43.  The reviewing court reasoned, when nothing was ever stated in the defendant's presence suggesting that he had a choice between a bench or a jury trial, the defendant could not be deemed to have agreed with his attorney's participation in a bench trial.  
Eyen
, 291 Ill. App. 3d at 43.  Because the defendant did not make a knowing and understanding oral or written waiver of his right to a jury trial, the reviewing court reversed the defendant's conviction and remanded the case for a new trial.  
Eyen
, 291 Ill. App. 3d at 43.

In the present case, we conclude defendant did not make a knowing and understanding waiver of his right to a jury trial.  The record reflects that until the morning of trial, defendant was scheduled for a jury trial.  Later that same morning, however, defense counsel advised the trial court that defendant had requested a bench trial.  The record reflects that defendant was not present at this time.  That afternoon, a bench trial commenced immediately, without comment.  As in 
Elders
 and 
Eyen
, the trial court did not discuss the right to a jury trial in defendant's presence.  See 
Elders
, 349 Ill. App. 3d at 583-84; 
Eyen
, 291 Ill. App. 3d at 40.  In both 
Elders
 and 
Eyen
, the reviewing court found that the discussion and waiver of a jury trial outside the defendant's presence did not constitute a knowing and understanding waiver of the jury trial by the defendant himself.  
Elders
, 349 Ill. App. 3d at 584; 
Eyen
, 291 Ill. App. 3d at 43.  Here, the record does not indicate that defendant was present when his counsel indicated that defendant would "like to go with a bench trial."  The trial court failed to admonish defendant about the jury waiver, and the record reflects that the trial court never addressed defendant in open court about the consequences of waiving his right to a jury trial.  We conclude that defense counsel's statement to the trial court on the day of trial, outside defendant's presence, did not constitute a knowing and understanding waiver by defendant of his right to a jury trial.  See 
Elders
 349 Ill. App. 3d at 584; 
Eyen
, 291 Ill. App. 3d at 43.

We reject the State's contention that defendant's failure to object to a bench trial once the bench trial began constituted a knowing and understanding waiver.  In 
Elders
, the State argued that the "defendant should be deemed to have acquiesced because he did not object to proceeding to a bench trial."  
Elders
, 349 Ill. App. 3d at 584.  The reviewing court rejected the State's argument, noting that the only time a bench trial was ever mentioned in the defendant's presence was at one of the many pretrial conferences.  
Elders
, 349 Ill. App. 3d at 583-84.  The court held that the defendant's silence when the bench trial began did not satisfy the jury waiver requirement unless the defendant, or defense counsel in the defendant's presence, made some affirmative act that waived a jury trial. 
Elders
, 349 Ill. App. 3d at 584.  Here, as in 
Elders
, there was no affirmative act by defendant or by  defense counsel in defendant's presence that would indicate defendant's knowing jury trial waiver.  Thus, defendant's failure to object when the case proceeded to a bench trial is not sufficient indication of his waiver of the right to a jury trial.  See 
Elders
, 349 Ill. App. 3d at 584. 

We also reject the State's argument that defendant's signed jury waiver indicates a knowing and understanding waiver of a jury trial.  A written jury waiver alone does not constitute a knowing and understanding waiver of the right to a jury trial.  
Scott
, 186 Ill. 2d at 284.  In 
Scott
, the defendant executed a written jury waiver in his attorney's office, which was then filed outside the defendant's presence.  
Scott
, 186 Ill. 2d at 284.  At no time in 
Scott
, however, was the issue of jury waiver addressed by the trial court in open court with the defendant present.  Instead, the only mention of a bench trial that occurred in the defendant's presence was on the day of trial, when defense counsel stated, " 'And we would proceed to the bench trial today,' " to which the trial court responded, " 'Okay, we'll proceed to bench trial, then?' " and " 'We will then proceed with the bench trial.' "  
Scott
, 186 Ill. 2d at 284.  The 
Scott
 court held there was no valid jury waiver, written or otherwise, because the defendant was not present in open court when the jury waiver was discussed.  
Scott
, 186 Ill. 2d at 285.  The defendant did not acknowledge the written jury waiver in open court.  
Scott
, 186 Ill. 2d at 286.  Thus, in the present case, by itself the signed jury waiver does not show that defendant knowingly and understandingly waived his right to a jury trial, particularly when here, as in 
Elders
, the signed jury waiver appears to have been done after defendant was found guilty.

Finally, the State cites 
People v. Lombardi
, 305 Ill. App. 3d 33 (1999), for the proposition that, although the record does not indicate defendant was present, that does not mean he was not present.  Although 
Lombardi
 does contain language to that effect, it was not dispositive in the court's decision to find a knowing jury waiver.  
Rather, and most important in distinguishing 
Lombardi
 from the instant case, the reviewing court focused on the trial court's extensive colloquy with the defendant at the conclusion of the trial but before judgment was entered.  
Lombardi
, 305 Ill. App. 3d at 38-39.  The trial court repeatedly asked the defendant if she was waiving her right to a jury trial and if she knew and understood what she was doing.  The trial court even went so far as to say a mistrial would be declared and a jury trial would be held if she wanted to have one, even after the conclusion of the bench trial.  
Lombardi
, 305 Ill. App. 3d at 39.  In the instant case, no such discussion occurred.  We therefore conclude that defendant did not knowingly and understandingly waive his right to a trial by jury, and we hold that defendant's conviction must be reversed and the case remanded for a new trial.  Plain error occurred, and we cannot deem this error harmless.  See 
Elders
, 349 Ill. App. 3d at 584.

Because we are remanding for a new trial, we must address the issue of the admissibility of DelValle's statements to McMahon, as the issue is likely to arise on retrial.  Defendant contends that the trial court erred when it determined that the comments made by DelValle to McMahon constituted "excited utterances" and fell under that exception to the hearsay rule.  Further, defendant contends that the trial court erred because the statements made by DelValle to McMahon, after she had already spoken to another officer on the scene, were testimonial in nature and thus violated the confrontation clause and the rule recently announced in 
Crawford v. Washington
, 541 U.S. ___, 158  L. Ed. 2d 177, 124 S. Ct. 1354 (2004).  In 
Crawford
, the United States Supreme Court held that a witness's out-of-court statements that are testimonial are barred under the confrontation clause of the sixth amendment to the United States Constitution (U.S. Const., amend. VI) unless the witness is unavailable and the defendant had prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the court.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374; 
cf.
 
In re C.M.
, 351 Ill. App. 3d 913 (2004) (
Crawford
 ruling does not apply to civil cases).   

The State claims that DelValle's out-of-court statements constitute excited utterances and thus fit an exception to the hearsay rule.  We reject this claim.  One of the requirements for an excited utterance is the "absence of time to fabricate" the statement.  
People v. Smith
, 152 Ill. 2d 229, 258 (1992).  Because of this "absence of time," the statement is deemed reliable.  The declarant has not had time to reflect on his or her situation and formulate a fabricated response.  Before she spoke with McMahon, DelValle had been questioned for approximately five minutes by the backup officer.  We do not know how many or what type of questions were asked by the backup officer.  The record does not reflect what occurred during DelValle's conversation with the backup officer and, although this is just speculation, it is possible that she may have had opportunity to reflect on her statements, moving them outside the realm of excited utterances.  Moreover, the backup officer was never even identified.  In 
People v. Sommerville
, 193 Ill. App. 3d 161 (1990), a woman who had been sexually assaulted spoke about the assault with her fiancé moments before speaking with a police officer.  At trial, the statements made to the police officer were admitted by the trial court.  
Sommerville
, 193 Ill. App. 3d at 173. The reviewing court, however, reversed the trial court's ruling, holding in part that the intervening conversation with the fiancé had disqualified the statements from the "excited utterance" exception.  
Sommerville
, 193 Ill. App. 3d at 175.  The instant case presents a similar scenario.  The statements made by DelValle to McMahon, due to the intervening conversation with the backup officer, do not fall under the "excited utterance" exception to the hearsay rule.

We next consider whether the statements are testimonial and, thus, as defendant contends, violate the confrontation clause.  In 
Crawford
, the defendant was charged with stabbing a man who allegedly had sexually assaulted the defendant's wife.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 184, 124 S. Ct. at 1356.  During police questioning, the wife gave a statement that implicated her husband in the crime.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 185, 124 S. Ct. at 1358.  At trial, the defendant's wife did not testify.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 185, 124 S. Ct. at 1358.  Her statement was admitted during trial pursuant to the hearsay exception for statements against penal interest.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 185-86, 124 S. Ct. at 1358.  The defendant was convicted, and he appealed, challenging the constitutionality of the State's use of his wife's statement.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 187, 124 S. Ct. at 1359.

The Court's analysis began by noting that the confrontation clause provides criminal defendants the right to be confronted by the witnesses against them.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 187, 124 S. Ct. at 1359; see U.S. Const., amend. VI.  The Court then discussed the history of the confrontation clause and its own case law on the subject.  It concluded by reaffirming that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 197, 124 S. Ct. at 1369.  Applying this principle to the situation at issue in 
Crawford
, the Court determined that the wife's statement to the detectives was testimonial in nature and, thus, because it did not meet the two requirements of the common-law exception, the statement was inadmissible.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

We note that the 
Crawford
 Court declined to specifically define "testimonial."  
Crawford
,  541 U.S. at ___, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.  The Court listed several examples of evidence that it considered to be testimonial, such as affidavits, custodial examinations, or other similar pretrial statements that a declarant would reasonably expect to be used by the prosecution.  
Crawford
, 541  U.S. at ___, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364.  The Court, however, stated that "[s]tatements taken by police officers in the course of interrogations are also testimonial."  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364.

Since 
Crawford
 was announced,  Illinois courts have considered what 
Crawford
 meant by 

"testimonial."  For example, in 
People v. Thompson
, 349 Ill. App. 3d 587 (2004), the reviewing court held that statements made by a domestic violence victim in an order of protection, which were introduced at trial, violated the Constitution's confrontation clause.  
Thompson
, 349 Ill. App. 3d at 594.  Referring to the statements made in the order of protection, the reviewing court stated that the statements were testimonial and thus barred under the sixth amendment, since the victim was not unavailable to testify and the defendant did not have a prior opportunity to cross-examine.  
Thompson
, 349 Ill. App. 3d 594.

Illinois courts have provided some guidance toward a working definition of "testimonial evidence."  For example, in 
People v, Foss
, 201 Ill. App. 3d 91 (1990), the reviewing court stated, "[e]vidence includes all the means by which any alleged matter of fact is established or disproved," and "is further defined as any species of proof legally presented at trial through the 'medium of witnesses, records, documents, exhibits, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury.' "  
Foss
, 201 Ill. App. 3d at 94-95, quoting Black's Law Dictionary 498 (5th ed. 1979).  
Further, in 
In re the Application of the County Treasurer and Ex Officio County Collector
, 87 Ill. App. 2d 133, 137 (1967), the reviewing court stated, "evidence *** includes all the means by which any alleged matter of fact is established or disproved.  Testimony is not synonymous with evidence; the latter is a more comprehensive term." 
 We also note that, according to Black's Law Dictionary, evidence is said to be testimonial when "elicited from a witness in contrast to documentary or real evidence."  Black's Law Dictionary 1476 (6th ed. 1990).  From these authorities, we believe that, depending on the context and circumstances of the case, testimonial evidence encompasses out-of-court statements that are offered to establish or disprove an element of the offense charged or a matter of fact.  

Accordingly, we believe that, under the circumstances in the present case, the testimony given by McMahon regarding the statements made to him by DelValle violated the rule articulated in 
Crawford
.  DelValle's statements to McMahon were out-of-court statements made in response to police questioning while the police were conducting an investigation into the possible commission of a crime.  McMahon testified that DelValle told him defendant had pushed her, punched her, and choked her.  The State offered this testimony to establish an element of the offense of domestic battery.  Under 
Crawford
, this constitutes testimonial evidence.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364.  Because DelValle's out-of-court statements were testimonial evidence, they are inadmissible under the sixth amendment.  See 
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 197, 124 S. Ct. at 1369.

Pursuant to 
Crawford
, when statements are testimonial in nature and the declarant is absent from trial, those statements may be admitted only when the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant.  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 197, 124 S. Ct. at 1369.  In the present case, we have concluded the statements are testimonial in nature.  The record does not reflect whether DelValle was available.  She simply did not present herself in court on the day of the trial and thus did not offer her own testimony.  The record also does not reflect that defendant ever had any prior opportunity to cross-examine DelValle about her statements.  Because the exception does not apply, statements pertaining to what DelValle purportedly told McMahon should have been barred under the sixth amendment's confrontation clause.  On retrial, the State may not present this type of testimony from McMahon, regarding out-of-court statements that are testimonial in nature and do not fit the common-law exception.  However, if DelValle appears at retrial, she may of course testify as to what happened to her on July 12, 2002.

Last, defendant requests that he receive $5 credit for each of the days that he was in custody prior to sentencing.  Defendant maintains that he was in custody in excess of 20 days, and the trial court did not afford him any credit in the sentencing order.  Pursuant to section 110--14 of the Code (725 ILCS 5/110--14 (West 2002)), "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant."  The State confesses error.  Therefore, defendant was entitled to satisfaction of his fine.  On retrial, should defendant be found guilty and a fine imposed, then defendant should be entitled to credit pursuant to section 110--14 of the Code.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand the case for a new trial.

Reversed and remanded.

McLAREN, J., concurs.

PRESIDING JUSTICE O'MALLEY, specially concurring:

I agree that this case must be remanded because defendant did not waive his right to a trial by jury, but I disagree with the majority's resolution of the hearsay issues it anticipates will recur on remand.  First, I disagree that DelValle's statements were not excited utterances.  The majority states very little of the law governing the admission of excited utterances and in fact does not even lay out the bare requisites for admission.  Therefore, I will do so.  The proponent of the statement must demonstrate: (1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) that the proffered statement related to the circumstances of the occurrence.  
People v. Williams
, 193 Ill. 2d 306, 352 (2000).  Notably, defendant admits that the first and third elements were satisfied here--that is, DelValle's statements concerned a sufficiently startling event (a "heated argument," as defendant puts it).  The remaining question is whether DelValle lacked time to fabricate.  The majority inexplicably ignores the rule that the trial court has considerable discretion in determining whether to admit a hearsay statement as an excited utterance.  
People v. Georgakapoulos
, 303 Ill. App. 3d 1001, 1012 (1999); 
People v. Gibson
, 99 Ill. App. 3d 1068, 1076 (1981) ("Trial courts are vested with considerable discretion in admitting testimony which comes within the spontaneous declaration exception to the hearsay rule, for each case must rest on its own facts").  The majority does not recite this standard of review and indeed appears not even to heed the standard implicitly.  While the majority purports to issue an advisory opinion on how the trial court ought to rule if the relevant facts on remand are not changed, the majority fails to consider how the trial court actually ruled on the facts as they now stand.  Though it owes deference to the trial court, the majority  simply addresses the arguments of the parties as if it were writing on a blank slate, failing to defer to--and indeed simply ignoring--the trial court's ruling on this fact-intensive issue.  The majority finds that the State failed to prove that DelValle lacked the time to fabricate her statements to McMahon.  The majority considers it conclusive that the State did not establish what transpired during DelValle's  conversation with the backup officer prior to her conversation with McMahon.  Embarking on what it admits is "just speculation," the majority suggests: "[I]t is possible that [DelValle] may have had opportunity to reflect on her statements, moving them outside the realm of excited utterances."  Slip op. at 11.  It is rather alarming in itself to see a court of law base a decision on "just speculation," but the majority combines its speculation with a flawed understanding of the law.  Knowing nothing about the conversation between DelValle and the backup officer, the majority decides that DelValle's later remarks to McMahon were not spontaneous because the prior conversation could have allowed her time to reflect and fabricate.  Thus, the majority holds that DelValle's statements should be excluded simply because of an intervening conversation.  This is clearly contrary to law.  The supreme court has "reject[ed] out of hand any contention that a declarant cannot make a spontaneous declaration to a person after having spoken previously to another."  
People v. House
, 141 Ill. 2d 323, 386 (1990).  In determining whether there has been sufficient time to fabricate, the "critical inquiry" is " ' "whether the statement was made while the excitement of the event predominated." ' [Citations.]"  
People v. Williams
, 193 Ill. 2d 306, 353 (2000).  McMahon testified that DelValle's demeanor when he spoke to her was the same as when he had arrived at the scene: she was distraught, frightened, and crying, and her voice quivered with emotion as she spoke.  Since defendant does not dispute that DelValle's statements concerned an event that could produce an unreflecting remark, and there is no basis to believe that her level of excitement diminished before she spoke to McMahon, there simply is no warrant for ruling that her statements are inadmissible as excited utterances.

The majority relies on 
People v. Sommerville
, 193 Ill. App. 3d 161 (1990), where the court held that statements made by a sexual assault victim to a police officer in reference to the assault did not constitute excited utterances because the victim had previously spoken at length about the attack to her fiancé, their conversation consisting of "detailed repetition of answers to *** successive questions," which "removed the spontaneity and immediacy required for spontaneous declarations."  
Sommerville
, 193 Ill. App. 3d at 175.  Here, of course, there was no evidence of the content of the intervening conversation.  The majority, resolving all doubts against the State, speculates that the conversation may have occurred like the one in 
Sommerville
, and in so doing ignores the critical question of whether DelValle was still under the excitement of the event when she spoke to McMahon, the most direct evidence of which was her actual demeanor when speaking.  Illinois courts have recognized that a declarant's excitement from the triggering event can outlast an intervening conversation.  See, 
e.g.
, 
House
, 141 Ill. 2d at 386 (victim's statements to officer 2½ hours after the alleged attack were admissible as excited utterances despite intervening conversation with another police officer); 
Georgakapoulos
, 303 Ill. App. 3d at 1015 (victim's successive statements to different individuals after the attack were admissible as excited utterances; relying on 
House
's holding that statements are not 
per se
 inadmissible simply because made after a previous conversation).  In speculating its way to a rejection of the trial court's fact-bound determination, the majority both ignores substantive law and dispenses with the most basic premises of appellate review. 

Given my conclusion that DelValle's statements were excited utterances, I would reach the issue of whether the statements were nonetheless barred by the confrontation clause as interpreted in 
Crawford
.  The majority, however, discusses the federal issue despite having found the evidence barred on state-law grounds.  This is inadvisable.  A reviewing court should not reach constitutional issues if the case can be determined on other grounds.  
People v. Nash
, 173 Ill. 2d 423, 432 (1996);  
City of Chicago v. Powell
, 315 Ill. App. 3d 1136, 1140 (2000)
.  I am especially puzzled by the majority's insistence on reaching a constitutional issue of such elusiveness as is raised here.  The Court in 
Crawford
 left "for another day any effort to spell out a comprehensive definition of 'testimonial.' "  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.  The Court acknowledged that its refusal to provide a definition might cause uncertainty in lower courts, but stressed that the greater uncertainty was in prior law that the Court was overruling.  
Crawford
, 541 U.S. at ___ n.10, 158 L. Ed. 2d at 203 n.10, 124 S. Ct. at 1374 n.10.  After finding that a witness's statements to police after 
Miranda
 warnings were "testimonial" because they were "given in response to structured police questioning," the Court offered a tentative, minimalist definition of "testimonial" for future reference:

"Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.  These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed."  
Crawford
, 541 U.S. at ___, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

With the ink hardly dry on 
Crawford
's Copernican shift in federal constitutional law, a panel of the Illinois Appellate Court plummets undaunted, but for no good reason, into the murky waters left in 
Crawford
's wake.  In its zeal, the majority stretches the definition of  "testimonial" to unprecedented girth in Illinois.  As I write this, just six Illinois cases have had to decide what constitutes a "testimonial" statement under 
Crawford
; all six decided that the statements at issue were inadmissible under 
Crawford
.  See 
In re Rolandis G.
, No. 2--03--0019, slip op. at 7 (October 14, 2004) (victim's statements to police on the day of the alleged assault, and to a child advocacy worker a week later, were testimonial, being the result of "formal and systematic questioning"); 
People v. McMillan
, No. 5--02--0794, slip op. at 11 (September 1, 2004) (statements made by driving-under-the-influence (DUI) defendant's friend, who inexplicably appeared at the scene of the crash while a police officer was questioning defendant, were testimonial; the witness's statements were in response to an "accusatory" question by the officer);  
In re T.T.
, 351 Ill. App. 3d 976, 989-91 (2004) (victim's statements to a police officer six months after alleged assault were testimonial as the result of "structured police questioning"; victim's statements to Department of Children and Family Services (DCFS) worker four months after the alleged assault were also testimonial because the DCFS worker was a "government officer" who took the victim's "formal statement *** with an eye toward prosecution"); 
People v. Thompson
, 349 Ill. App. 3d 587, 594 (2004) (victim's written statement, made in the course of obtaining an order of protection in response to an attack the day before, was testimonial); 
People v. Martinez
, 348 Ill. App. 3d 521, 534 (2004) (witness's written statement given several months after charged incident was testimonial); 
People v. Patterson
, 347 Ill. App. 3d 1044, 1050-51 (2004) (witness's grand jury  testimony was testimonial).  The circumstances surrounding the statements in these cases were significantly different from what we see in this case.  DelValle did not give her statements in a formal setting, months, weeks, or even days after the alleged incident.  Rather, she gave them at the scene of the alleged incident mere minutes after the incident supposedly occurred.  Moreover, there is no evidence that DelValle was subjected to structured questioning.  Asked how he went about questioning DelValle, McMahon testified: "I asked her basically *** what was happening."  McMahon then proceeded simply to relate DelValle's story.  It seems that McMahon asked but one question, not a series of questions.  The closest case factually is 
McMillan
, where the statements were given immediately after the crash that was the basis of the DUI charge.  However, the salient difference here is that DelValle gave her statements while still under the apparent stress of a startling incident, thus diminishing the possibility of reflection and fabrication, whereas the witness in 
McMillan
 betrayed no indication that he was involved in the crash.  I can only conclude that the majority has picked an inopportune time to expand 
Crawford
 far beyond the facts of 
Crawford
 itself and of subsequent Illinois applications.