2022 IL App (2d) 220024-U
No. 2-22-0024
Order filed December 2, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20-CM-891 |
| | ) | |
| BILLY M. GORDON, | ) | Honorable |
| | ) | Keith A. Johnson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court abused its discretion when it admitted the alleged victim's 911 call as an excited utterance, when it prevented defendant from eliciting testimony concerning bias or motive, and when it allowed the State to question the alleged victim about prior consistent statements. Further, these errors were not harmless. Reversed and remanded.

¶ 2    Defendant, Billy M. Gordon, appeals from his conviction for domestic battery. He contends the trial court abused its discretion by making several evidentiary rulings concerning hearsay in the State's favor. The State responds that the trial court did not abuse its discretion; alternatively, any errors were harmless. For the reasons that follow, we conclude the trial court abused its

discretion with respect to several rulings, and these errors were not harmless. Accordingly, we reverse and remand.

¶ 3                                                    I. BACKGROUND

¶ 4        The State charged defendant on April 19, 2020, with two counts of domestic battery, alleging that on April 18, 2020, defendant made contact with Faye Gordon, his wife, that (1) caused bodily harm and (2) was of an insulting or provoking nature. 720 ILCS 5/12-3.2(a)(1) (bodily harm), (a)(2) (insulting or provoking nature) (West 2020).

¶ 5        Before trial, the State filed a motion *in limine* seeking to introduce statements by Faye, under the excited utterance hearsay exception, during a 911 call on the date of the altercation. Defendant opposed the motion. During argument, the State proffered that the altercation occurred around 7:30 p.m. and Faye called 911 at 7:36 p.m. The State also played the 911 call in open court.

¶ 6        In response, defense counsel proffered that Faye's written police statement indicated the altercation occurred at 7:00 p.m., Faye called her son at 7:15 p.m., and she called police at 7:33 p.m. Regarding Faye's call to her son, defense counsel argued, "who knows what was even said on that phone call, if they concocted some sort of scenario, we don't know." Counsel argued that Faye "was responding calmly. She was not frantic in that call. Her tone, as I just indicated, Your Honor, was calm."

¶ 7        The State, in reply, agreed with defense counsel as to the contents of the written statement: "It does say she called her son. And it provides a time, it says 7:15. And the police arrived at 7:33 or she said she called them around 7:33. That is overall a short period of time. She called the first person, I would proffer, that she could trust, which is her son. *After speaking with [him], then immediately afterwards, she calls the police. There's nothing between that time period.*" (Emphasis added.)

Nevertheless, the State argued that even a 30-minute gap between the altercation and the 911 call would not have rendered the excited utterance exception inapplicable. Regarding Faye's tone, the State argued, "it sounds like someone who has their abuser still in the household with her. She's not able to be loud and excited and crying and hysterical because she's trying to call the police so he doesn't know that at the time."

¶ 8 The trial court granted the State's motion. The court, relying on *People v. Dominguez*, 382 Ill. App. 3d 757 (2008), articulated the standard for admitting statements under the excited utterance exception:

> "Per the *Dominguez* case to secure admission of an excited utterance, the proponent of the evidence must demonstrate, number one, the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement, number two, absence of time to fabricate and, number three, a statement relating to the circumstances of the occurrence."

The court acknowledged that Faye told the 911 operator it was not an emergency, "but the court finds that that sort of comment is really more directed to her not wanting an ambulance." It also noted that Faye "went on to say that she was making sure that a car*** was going to come so that he could, in the way she said it, so he could get up on out of here or whatever"; thus, "it's clear she wanted him to leave the residence at that point." Importantly, regarding the absence-of-time-to-fabricate element, the court stated:

> "Absence of time to fabricate, and we can debate whether it was about six minutes between when this allegedly happened and the 911 call or if it was more in the realm of 36 minutes, but I think the significant point there, as I said earlier, is *I am not aware of *** anyone who*

*spoke to her, anything else she did during that time period that would have sort of broken the spontaneity of these statements.*" (Emphasis added.) The court twice more stated, inaccurately, that Faye did not speak to anyone before she called 911. The case proceeded to a jury trial.

¶ 9    The State called Faye as its first witness. She and defendant had been married for three years and lived together in April 2020. Her relationship with defendant was "strained" and "very stressful."

¶ 10    On April 18, 2020, Faye asked defendant to take her to the store, but defendant left the home alone at some point while Faye was asleep. Faye laid down to sleep around 4:00 p.m. and awoke in the evening. Defendant was not there, so she called him twice, but he did not answer.

¶ 11    Upon his return, defendant immediately went to the basement where he had been sleeping. Faye went down to speak with him, but defendant ignored her. Defendant walked outside through the basement's sliding glass door. Faye locked the door and went upstairs. After entering the kitchen, Faye saw defendant standing at the kitchen's exterior door. She opened the inner door, but left the screen door locked. Defendant told her to open the door, but she refused "because he kept locking my daughter out." Faye walked away briefly, then returned and unlocked the door.

¶ 12    Defendant opened the door and "snatched" Faye through the door. Faye fell and hit her head on the concrete patio. She grabbed onto his clothes, so he started choking her while straddled on top of her. She sustained a cut to her hand and finger during the altercation. She was "frightened" and unable to breathe for "a second or two" while defendant choked her. She felt pain on the back of her head for "maybe two days." She also felt pain in her back, her neck, and her shoulders.

¶ 13     After the altercation, Faye called her son, then 911. Over the defense's objection, the State introduced a recording of the 911 call into evidence and played several excerpts for the jury. In relevant part, Faye told the operator, "It's not an emergency, but my husband got into an altercation and he slammed my head outside on the concrete"; she further described the altercation and indicated that her head hurt and she was sore.

¶ 14     On cross-examination, Faye agreed that defendant cheated on her multiple times during the relationship, which upset her. She filed an order of protection in June 2020, seeking sole possession of the house, and petitioned for divorce in October 2020, seeking maintenance and a division of the marital property.

¶ 15     Defense counsel asked Faye about a conversation between her and Mary Doris, defendant's sister, on July 4, 2019. The State objected on hearsay grounds; defense counsel stated he wanted to introduce statements made by Faye to prove bias or motive. At a sidebar, defense counsel argued, "It is our belief that Ms. Doris *** had told [defendant] that she was going to try to get him out of the house, specifically going to put him out." The State responded that the statements should also be excluded "because of relevance," highlighting the nine-month gap between that conversation and the altercation. Defense counsel clarified that the statement sought to be elicited was made by Faye. The trial court sustained the State's objection without explanation.

¶ 16     Faye initially agreed the altercation occurred around 7:00 p.m. ("It started at 7:00-something") but clarified that she was not sure what time the altercation started. After the altercation, she called her son and spoke to him, then called police. She agreed that she called police at 7:33 p.m. and was not calm. She told the police operator that "it was not an emergency as far as life and death" but she needed assistance. She changed out of her pajamas before police arrived.

¶ 17    Defense counsel elicited that Faye spoke to Doris again on the night of the altercation and asked Faye if she had made a series of statements to Doris inconsistent with her trial testimony. Faye denied making the proffered inconsistent statements.

¶ 18    On re-direct examination, the State sought to rehabilitate Faye by offering prior consistent statements. The State asked Faye, "Did you include in your written statement that there was an argument about going to the store?" Defense counsel objected: "[o]utside the scope, improper rehabilitation, hearsay." The trial court overruled the objection. The State then asked Faye a series of questions about things she wrote in her written statement to the police. The State also asked Faye about statements she made to the 911 operator, to which defense counsel again objected on hearsay and improper rehabilitation grounds. The trial court again overruled the objection.

¶ 19    The State next called Deputy Eric Perkins of the Kane County Sheriff's Department. On April 18, 2020, at around 7:30 p.m., he was dispatched to defendant's home. He spoke to defendant, who said he had a dispute with his wife that included "some sort of physical altercation." Defendant was not injured.

¶ 20    Perkins observed Faye's demeanor. "She was upset and angry at times, shaken up." She was shaking and had a cut on her left hand. Faye showed Perkins her neck and head, but Perkins did not notice any visible injury to those areas. Further, Faye "was very talkative, very animated in her description."

¶ 21    Perkins asked defendant as to his involvement and how Faye sustained her injuries, and defendant said it was an accident. Defendant engaged in "[n]ormal conversation" and "there was nothing out of the ordinary speaking with him." Defendant also told Perkins that he helped Faye off the ground.

¶ 22     The defense called Mary Doris. Doris testified that she spoke to defendant at around 6 p.m. on April 18, 2020, and came to his house a little after 9 p.m. Defendant was not home, but Doris spoke with Faye. "She told me that [defendant] pushed her into the basement—the entry to the basement, there is paneling there and she said that [defendant] pushed her into that paneling headfirst." Faye did not mention that she was choked, that the altercation occurred on a patio, that her head hit the concrete, or that she was hit.

¶ 23     On cross-examination, Doris acknowledged that defendant called her a second time around 7:10 p.m. She asked him if he wanted her to come "because they were fighting in the background back and forth." However, she was not there and did not observe any physical altercation. After Doris's testimony, the defense rested.

¶ 24     Of the two domestic battery counts, the jury found defendant guilty of the count alleging insulting or provoking contact and not guilty of the count alleging bodily harm.

¶ 25     Defendant filed a motion for judgment notwithstanding the verdict or a new trial. He argued the trial court erred in three respects pertinent to this appeal. First, in admitting the 911 recording over defense counsel's hearsay objection the court overlooked that Faye spoke to her son prior to calling 911, rendering the 911 statements inapplicable under the excited utterance exception. Second, in sustaining the State's hearsay objection to (and prohibiting the defense from questioning Faye about) her July 4, 2019, conversation with Mary Doris, the court failed to recognize that the proffered statements fell under the state-of-mind exception to the rule against hearsay and were thus admissible. Alternatively, excluding those statements violated defendant's Confrontation Clause rights. Third, in overruling defense counsel's objections to the State's questioning Faye about specific statements in her written statement to police and her verbal

statements during the 911 call, the court misapplied the prior-consistent-statement exception to the hearsay rule.

¶ 26    The trial court denied defendant's motion in a written order, without explaining its reasoning, and sentenced him to 18 months' conditional discharge. Defendant timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28    Defendant contends the trial court abused its discretion when it (1) allowed the State to play the 911 recording as an excited utterance, (2) barred the defense from questioning Faye about her July 4, 2019, conversation with Mary Doris as inadmissible hearsay, and (3) allowed the State to question Faye about her prior statements in her written police report and to the 911 operator. "The admissibility of evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *People v. Brand*, 2021 IL 125945, ¶ 36. A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable. *Id.*

¶ 29    Each of the challenged rulings involves the admissibility of hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted and is generally inadmissible. Ill. Rs. Evid. 801(c), 802 (eff. Jan. 1, 2011); *People v. Tenney*, 205 Ill. 2d 411, 432 (2002). Some hearsay is nevertheless admissible if it falls under a recognized exception. See Ill. R. Evid. 803 (eff. Jan. 1, 2011). We review each ruling in turn.

¶ 30              A. Faye's 911 Statements Do Not Qualify as Excited Utterances

¶ 31    Defendant first challenges the trial court's ruling that Faye's 911 statements qualified under the excited utterance exception. See Ill. R. Evid. 803(2) (eff. Jan. 1, 2011) (an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Otherwise inadmissible hearsay can be admitted substantively if the proponent can show "(1) the occurrence of an event or condition

sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence." *People v. Lerma*, 2016 IL 118496, ¶ 5 n.1. Statements admitted under this exception are those that tend to be reliable. *Id.* Courts analyze the totality of the circumstances to determine if the exception (previously the spontaneous declaration exception) applies. *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). "The totality of the circumstances analysis involves consideration of several factors, including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest." *Id*. Regarding the time factor, the critical inquiry is whether the declarant made the statement while the excitement of the event predominated. *Id.* The declarant's statements need not be contemporaneous to the occurrence of the startling event. *People v. Dominguez*, 382 Ill. App. 3d 757, 768 (2008) (citing *People v. Smith*, 152 Ill. 2d 229, 259-60 (1992)).

¶ 32    During argument on the motion *in limine*, defense counsel and the State both ultimately proffered that Faye's written statement indicated she called her son at 7:15 p.m. and 911 at 7:33 p.m. The State further proffered that Faye called 911 *immediately* after speaking to her son. These proffers implied that Faye spoke to her son for about 18 minutes. Notwithstanding, after taking the State's excited utterance motion *in limine* under advisement for several days, the trial court stated three times in its ruling that it was unaware of any intervening conversations between the alleged abuse and the 911 call: "I am not aware of *** anyone who spoke to her, anything else she did during that time period that would have sort of broken the spontaneity of these statements."

¶ 33    Defendant argues that the intervening conversation between Faye and her son precluded application of the excited utterance exception. In *People v. Robinson*, 73 Ill. 2d 192, 199 (1978), our supreme court concluded that a victim's statements to police did not qualify under the exception where the victim provided details of the attack to her sister 3 ½ hours after the attack

ended, but prior to speaking to police. The court reasoned the statements were not spontaneous in that there was sufficient time for reflection and invention. *Id.* Similarly, in *People v. Sommerville*, 193 Ill. App. 3d 161, 175 (1990), this court concluded that a sexual assault victim's "lengthy conversation with her fiance" following her assault "destroyed the spontaneity of any statement given to the [testifying] police officer." The court noted the victim repeatedly stated to her fiance that the defendant raped her, and the repetition removed the spontaneity necessary to satisfy the excited utterance exception. *Id.* We note that each of these cases predates *People v. House*, 141 Ill. 2d 323, 392 (1990), in which our supreme court clarified that " '[t]he proper question is whether the statement was made while *the excitement of the event predominated*.' " (Emphasis in original) (quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.3, at 627 (5th ed. 1990)).

¶ 34     The State responds that this case more closely resembles *People v. Kinnerson*, 2020 IL App (4th) 170650. In *Kinnerson*, a woman was attacked by her son in her home sometime between midnight and 1 a.m. and called 911 at approximately 1 a.m. *Id.* ¶ 36. The victim sounded distraught during the 911 call and had visible injuries when police arrived. *Id.* The appellate court concluded that statements made during the 911 call satisfied the excited utterance exception. *Id.* ¶ 34. The court reasoned, "While she was no longer being physically attacked when her 911 call was made, the record does indicate that the attack occurred close in time to her call and that the startling nature of the event predominated." *Id.* ¶ 36. Further, "neither the fact that [the victim] knocked on a neighbor's door (and received no response) prior to making her 911 call, nor the fact that she answered questions posed by the 911 dispatcher destroyed the spontaneity of her statements or showed an opportunity for reflection." *Id.* ¶ 37. The State also cites *House* for the principle that there is no *per se* rule that a declarant cannot make an excited utterance to one person after having

previously spoken to another person. *House*, 141 Ill. 2d at 386.

¶ 35    We conclude the trial court abused its discretion when it granted the State's motion *in limine* because it completely disregarded the State's proffer that the altercation occurred at 7:00 p.m., Faye called her son at 7:15 p.m., and, after ending that conversation, *immediately* called 911 at 7:33 p.m. The State's proffer, consistent with defense counsel's, implied that Faye spoke to her son for about 18 minutes before calling 911. Further, Faye indicated during the 911 call that it was not an emergency, though the trial court inferred she meant she did not need an ambulance.

¶ 36    *Kinnerson* is distinguishable in that an 18-minute phone conversation is not comparable to knocking on a neighbor's door and receiving no response. *Contra Kinnerson*, 2020 IL App (4th) 170650, ¶ 37. Rather, the lengthy conversation between the victim and her fiance in *Sommerville* is a more apt comparison. *C.f. Sommerville*, 193 Ill. App. 3d at 175. It was unreasonable to infer, based on the proffer of the parties, that there was an absence of time to fabricate during an 18-minute conversation in which time the excitement may have subsided.

¶ 37    This court addressed a similar situation in *People v. Victors*, 353 Ill. App. 3d 801 (2004). There, the victim spoke to a backup officer for five minutes before speaking to the testifying officer. *Id.* at 810. The court explained, "The record does not reflect what occurred during [the victim's] conversation with the backup officer and, although this is just speculation, it is possible that she may have had opportunity to reflect on her statements, moving them outside the realm of excited utterances." *Id.* Accordingly, statements to the testifying officer did not fall under the excited utterance exception. *Id.*

¶ 38    The same rationale applies here. Certainly, during the 18-minute conversation Faye had with her son, she had an opportunity to reflect on her statements. We thus hold the trial court abused its discretion when it ruled the 911 call admissible under the excited utterance exception.

¶ 39                    B. Faye's July 4, 2019, Statements Qualify

Under the State of Mind Exception

¶ 40    Defendant next challenges the trial court's ruling that Faye's statements during her July 4, 2019, conversation with Mary Doris were inadmissible hearsay. Defendant argues those statements qualified under Rule 803(3) as statements of Faye's then existing state of mind. Rule 803(3) provides that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" is not excluded by the hearsay rule. Ill. R. Evid. 803(3) (eff. Sept. 28, 2018).

¶ 41    Preliminarily, the State argues that defendant forfeited this argument by failing to raise it in the trial court: "Based on defendant's arguments at trial, the trial court and opposing counsel had no reason to consider whether the alleged statement fell within an exception under Rule 803." The record demonstrates, however, that defense counsel argued during the trial that the contested statements were admissible to show bias and motive; moreover, defendant preserved the issue in his post-trial motion when he argued the statements were admissible to prove bias or motive and specifically cited Rule 803. We thus reject the State's forfeiture argument.

¶ 42    The State also argues that the proffered statements were appropriately excluded because they were remote in time and irrelevant in that:

"defendant fails to show how an alleged statement of a plan or intent made in July of 2019 manifested itself on April 18, 2020. There was no explanation or offer of proof why the victim with such a plan or intent would wait nine months to execute this nefarious plan. Without any connection between the nine-month-old alleged statement and the report of domestic battery, the alleged statement is simply not relevant and was properly excluded."

The State relies on *People v. Kirchner*, 194 Ill. 2d 502 (2000), to support its contention, noting that defendant "did not have anything to connect the alleged statement to the later report."

¶ 43    In *Kirchner*, the defendant was convicted of the first-degree murders of three people. The evidence indicated that the defendant killed them for drug money. *Id.* at 509-12. A witness testified that the defendant took a knife from his home to commit the crimes, and the State sought to bar evidence that the same witness possessed the knife two months earlier. *Id.* at 511-12, 538-39. The defendant argued the evidence was relevant because it made it more probable that the witness, not the defendant, was the one who used the knife to commit the murders to obtain drug money. *Id.* at 539. The trial court granted the State's motion and barred the evidence. *Id.* Our supreme court held that the trial court did not abuse its discretion because the witness's earlier possession of the knife was too remote in time to establish that he possessed the knife at the time of the murders; further, there was no evidence that the witness was involved in a drug offense at the time, thus no connection between his earlier use of the knife and the murders. *Id.* at 540.

¶ 44    *Kirchner* is inapposite because earlier possession of a weapon is not analogous to earlier evidence of bias or motive as it relates to future actions. In *Kirchner*, the witness acknowledged possessing the murder weapon on the night of the murders but testified that the defendant took it from his home before committing the crimes. The witness's possession on the night of the murder was never in dispute, thus his earlier possession had no bearing on who used the knife to commit the crimes. The defendant sought to establish that he never dispossessed the witness of the knife.

¶ 45    Here, defendant sought to establish that Faye had an earlier *unacknowledged* bias or motive and that her testimony was untruthful. The State asserts that there was no dispute about the nature of the relationship in that Faye testified the relationship was tumultuous and the couple had an argument on the night of the alleged battery. Further, "defendant fails to show how an alleged

statement of a plan or intent made in July of 2019 manifested itself on April 18, 2020." But the defense theory was that Faye lied because she wanted defendant out of the house, not because she and defendant had a tumultuous relationship. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Defendant was entitled to introduce Faye's July 4, 2019, statement to Doris that she wanted defendant out of the house to explain her motive for accusing defendant of battery. The passage of time between the statement to Doris and Faye's allegations go to the weight of the evidence, not its admissibility.

¶ 46    We thus reject the State's argument and conclude the July 4, 2019, conversation was relevant to establish Faye's prior intent to get defendant out of the house for reasons beyond the relationship being tumultuous, thus satisfying Rule 803(3). Accordingly, the trial court abused its discretion when it sustained the State's trial objection to this testimony.

¶ 47                    C. The Prior Consistent Statement Exception Did

                    Not Apply to Faye's Prior Consistent Statements

¶ 48    Defendant also challenges the trial court's allowing the State to question Faye regarding her written police statement and statements in her 911 call over defense counsel's objection. As discussed *supra* § II.A., the 911 statements were not admissible substantively under the excited utterance exception. Defendant further contends the statements were not admissible as prior consistent statements or as proper rehabilitation. Under Rule 613(c),

> "[A] prior statement that is consistent with the declarant-witness's testimony is admissible,
>
> for rehabilitation purposes only and not substantively as a hearsay exception or exclusion,
>
> when the declarant testifies at the trial or hearing and is available to the opposing party for

examination concerning the statement, and the statement is offered to rebut an express or implied charge that*** the witness's testimony was recently fabricated, if the statement was made before the alleged fabrication occurred." Ill. R. Evid. 613(c) (eff. Sept 17, 2019). Defendant argues that Faye's motive to lie arose prior to the contested statements, dating back to July 4, 2019, as evidenced by statements Faye made to Mary Doris that defense counsel attempted to elicit. The trial court sustained the State's objection to that testimony, thus it was never introduced. The State responds that the purported motive to fabricate asserted by the defense arose after Faye made these statements, thus they qualified under Rule 613(c).

¶ 49    We agree with defendant that Faye's prior consistent statements were inadmissible hearsay. To be admissible under Rule 613(c), the statements must have been offered to rebut a charge that "the witness's testimony was recently fabricated, *if the statement was made before the alleged fabrication occurred.*" (Emphasis added.) *Id.* Defendant's theory was that Faye lied during the 911 call, in her written police statement, and at trial. Faye's fabrication occurred contemporaneous with her prior consistent statements, and persisted through her trial testimony. Accordingly, Faye's fabrication was not recent, *i.e.*, it *predated* the 911 call and written statement introduced pursuant to Rule 613(c). *C.f. People v. Heard*, 187 Ill. 2d 36, 70 (1999) (concluding witnesses' motive to fabricate alibi testimony in murder trial existed at time of murders, thus alleged prior consistent statements were not made before the motive to fabricate arose). For this reason, the State's use of Faye's prior consistent statements served no purpose other than to impermissibly bolster her trial testimony. See *People v. White*, 2011 IL App (1st) 092852, ¶ 51 ("Courts have long recognized a bar against prior consistent statements, with limited exceptions, because these statements serve no purpose other than to bolster trial testimony.")

¶ 50    The State suggests that, because Faye filed an order of protection and a petition for dissolution of marriage after the alleged battery took place, her motive to lie arose after the alleged battery. The State's conclusion does not follow from its premise in that it presumes Faye lacked a motive to lie prior to the alleged battery, a proposition defendant sought to disprove by introducing the July 4, 2019, conversation between Faye and Doris.

¶ 51    The trial court abused its discretion when it allowed the State to rehabilitate Faye by asking her about prior consistent statements.

¶ 52              D. The Trial Court's Errors Were Not Harmless

¶ 53    Finally, the State argues that the trial court's errors were harmless. We disagree.

¶ 54    "When deciding whether an error is harmless, a reviewing court may (1) focus on the error to determine whether it might have contributed to the conviction, (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction, or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008). Evidentiary errors are harmless if, without the errors, there is no reasonable probability that the jury would have acquitted the defendant. *In re E.H.*, 224 Ill. 2d 172, 180 (2006).

¶ 55    We cannot say the aforementioned errors were harmless. Faye was the only witness who testified to the alleged battery, and her credibility was called into question by her inconsistent statements to Doris that same evening. Defendant was denied the opportunity to present evidence of the conversation that occurred nine months earlier which would have further undercut Faye's credibility by establishing her motive to lie prior to the altercation. While defendant was able to present his theory that Faye filed an order of protection and petitioned for dissolution of marriage for her motive to testify against defendant at trial, presenting the July 4, 2019, conversation would

have allowed defendant to argue that the motive to lie arose prior to the alleged battery.

¶ 56     The rulings also unfairly bolstered Faye's trial testimony. Defendant's sister testified that she spoke to Faye on the night of the alleged battery and Faye gave an account of the altercation that was inconsistent with the account she gave at trial. However, the State was allowed to diminish this discrepancy and bolster Faye's testimony with improperly admitted prior consistent statements: the recorded 911 call and her written statement to police. Repetition of these statements created a risk of unfairly bolstering Faye's credibility in the minds of the jury. See *People v. Stull*, 2014 IL App (4th) 120704, ¶ 106; *People v. McWhite*, 399 Ill. App. 3d 637, 641 (2010).

¶ 57     While we recognize that a photograph of a cut to Faye's finger was introduced at trial, the divergent explanations about where the altercation took place and the improperly introduced bolstering evidence lead us to conclude that the State failed to show that the trial court's errors were harmless. Defendant does not argue that double jeopardy precludes retrial. See U.S. Const., amend V; Ill. Const. 1970, art. 1, § 10. Regardless, the evidence submitted is sufficient to sustain a conviction, thus defendant may be retried. See *People v. Olivera*, 164 Ill. 2d 382, 393 (1995).

¶ 58                                III. CONCLUSION

¶ 59     For the reasons stated, we reverse the judgment of the circuit court of Kane County.

¶ 60     Reversed and remanded.