(Nos. 54393, 54394 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHNNIE "LITTLE JOHNNIE" WILKERSON, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHNNIE B. WILKERSON, Appellee.

*Opinion filed November 20, 1981.*

Tyrone Fahner, Attorney General, of Springfield, and Henry Lazarro, Special Prosecutor, of Urbana (Robert J. Biderman and James K. Horstman, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Daniel D. Yuhas and Don L. Johnson, of the Office of the State Appellate Defender, of Springfield, for appellee Johnnie "Little Johnnie" Wilkerson.

154

Marian Kurata, of Urbana, for appellee Johnnie B. Wilkerson.

MR. JUSTICE SIMON delivered the opinion of the court:

A Champaign County jury found the defendants, Johnnie "Little Johnnie" Wilkerson and Johnnie B. Wilkerson, guilty of attempted murder, armed violence and aggravated battery in the shooting of Ricky Jones, Terry Bolden and Lurlie Bolden. But the jury's verdict was tainted by both improper limitation of the cross-examination of a State's witness and confusing instructions. The appellate court reversed the convictions in unpublished orders (73 Ill. 2d R. 23) and granted the defendants new trials (90 Ill. App. 3d 1204; 89 Ill. App. 3d 1206). This court granted leave to appeal under Rule 315 (73 Ill. 2d R. 315), and we now affirm the appellate court.

The incident which gave rise to the convictions grew out of a tussle between two boys who were neighbors in a Champaign apartment complex. One boy was bitten; he complained to his mother, Vivian Turner, who took up the matter with the other boy's mother, Katie Bolden. An argument erupted, and a police officer was eventually called to quell the disturbance. After he left, tempers continued to flare, not only between the mothers but also between at least one of the defendants, who were Vivian Turner's brothers, and the victims, who were friends of or related to Katie Bolden.

When a fight broke out between Katie Bolden and Vivian Turner, Johnnie B. Wilkerson fired a shot into the air to break it up. Accounts of what followed differed. The State's witnesses said that Johnnie B. Wilkerson shot at them, hitting Lurlie and Terry Bolden, that he came into the Bolden apartment after them and shot Terry Bolden again, that he shot Ricky Jones in a struggle when Jones tried to grab Wilkerson's pistol, and that Little Johnnie Wilkerson

came into the apartment and shot Jones as he lay on the floor. The victims claimed that everyone on their side of the dispute was unarmed.

Johnnie B. Wilkerson said that when he saw Katie Bolden running to attack Vivian Turner, he tried to grab Katie but was spun around. He saw Ricky Jones with something menacing in his hand, heard a shot and fired at Jones. Wilkerson then shot at Terry Bolden, who had come charging at him. Confused and wounded in the back, Wilkerson went into the Bolden apartment by mistake, only to have a shoot-out with the already wounded Terry Bolden, who followed him in. Wilkerson admitted Ricky Jones was shot in a struggle for the pistol.

Little Johnnie Wilkerson testified that he was behind the apartment building listening to a car radio when the shooting started. He said that he went into his sister's apartment and did not shoot anyone. Both Katie Bolden and Vivian Turner broke and ran when the shooting started.

On cross-examination of Katie Bolden, the defendants tried to impeach her by pointing out that her testimony could be biased. Several felony-theft and welfare-fraud charges were pending against her in Champaign County, and the defendants' aim was to convey to the jury that she might be trying to curry favor with the prosecutor of those charges by slanting her story in the Wilkerson case to suit the State. An offer of proof disclosed the charges, but Bolden denied receiving any promises of leniency. The prosecutor in her case, who at one time was the prosecutor in the Wilkerson case, told Bolden that after the Wilkerson case was completed, he "would be in touch with her. I would be in contact with her lawyer and try to work something out *** to see what could be worked out." At the time of the Wilkerson trial, the prosecutor had not made up his mind what he was going to do with the pending charges against Katie Bolden. The trial court refused to allow the defendants to present this evidence to the jury.

The defendants should have been permitted on cross-examination to develop matters that would reasonably show the bias, motive or willingness of the State's witnesses to testify, and this included the fact that Katie Bolden was charged with a crime. (*People v. Barr* (1972), 51 Ill. 2d 50, 51.) The widest latitude should have been given to the defendants to show bias. (*People v. Mason* (1963), 28 Ill. 2d 396, 403.) Defense counsel should have been allowed to present the theory that the witness was not credible because she was being rewarded for her testimony, and should have. been allowed to expose to the jury the underlying charges so that the jurors could consider their effect, if any, on the reliability of the witness.

The trial court's decision to keep this evidence from the jury was not justified as an exercise of sound discretion. *People v. Eddington* (1979), 77 Ill. 2d 41, on which the State places heavy reliance, is unlike this case. In *Eddington* the witness had already given similar testimony in the case before the pending charges had arisen. Because the pending charges were from a different county, the prosecutor had little influence over their disposition. In *Eddington* it was proper to keep the matters from the jury because the pending charges could not reasonably have affected the bias, motive or willingness of the State's witness to testify. (77 Ill. 2d 41, 46.) But that is not the situation here. The Bolden charges were explicitly being held until the Wilkerson trial was completed, and a jury could reasonably infer that Bolden was influenced by those charges to give testimony favorable to the State, despite her protests to the contrary. The trial court should have permitted the whole matter to be presented to the jury.

The error in limiting the defendants' cross-examination was not harmless. The prejudice which ensues from a denial of the constitutional right of confrontation was described in *Alford v. United States* (1931), 282 U.S. 687, 692, 75 L. Ed. 624, 628, 51 S. Ct. 218, 219:

"Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. *** In this respect a summary denial of the right of cross-examination is distinguishable from the erroneous admission of harmless testimony."

(See also *Davis v. Alaska* (1974), 415 U.S. 308, 318, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1111; *Smith v. Illinois* (1968), 390 U.S. 129, 132, 19 L. Ed. 2d 956, 959, 88 S. Ct. 748, 750.) The test for harmless constitutional error is whether the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) Three approaches for measuring error under *Chapman* have been noted: (1) focusing on the error to determine whether it might have contributed to the conviction (*e.g, Fahy v. Connecticut* (1963), 375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229); (2)examining the other evidence in the case to see if overwhelming evidence supports the conviction (*e.g., Milton v. Wainwright* (1972), 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174); (3) determining whether the evidence is cumulative or merely duplicates properly admitted evidence (*e.g., Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726). (*People v. Collins* (1980), 85 Ill. App. 3d 1056, 1060; *State v. McKenzie* (1980), ___ Mont.___, ___, 608 P.2d 428, 458.) None of these ways of viewing the issue lead to the conclusion that the error in this case was harmless beyond a reasonable doubt.

First, the error could have contributed to the guilty verdicts. Had the jury heard the excluded impeachment evidence and chosen to disbelieve Katie Bolden, the verdict might well have been different. She was the linchpin of the State's case; she was the one who started the fight that led to the shooting.

Second, the other evidence in the case was not overwhelming. The prosecution and defense accounts sharply

varied, and each was supported by testimony of participants and bystanders. Because credibility was the key to the case, this error cannot simply be dismissed as harmless.

Finally, the impeachment evidence was not merely corroborative. The State points out that Katie Bolden's testimony was dubious, even without the attempted impeachment, because her relationship to the victims gave her an obvious motive to testify falsely. The jury, not the court, had the responsibility of determining credibility, and a court may not exclude otherwise admissible impeachment because it feels that the witness has already been sufficiently impeached.

In addition to placing improper limits on cross-examination, the trial court approved the use of confusing issues instructions. The Wilkersons advanced different defenses—self-defense for Johnnie B. Wilkerson and alibi for Little Johnnie Wilkerson. Nevertheless, when the standard form issues instructions were tendered, the trial court refused to give them. The defense instructions were patterned after Illinois Pattern Jury Instructions (IPI), Criminal, No. 25.05 (1968), which sets out, in great detail for each defendant, the exact issues to be decided under each charge, including, where appropriate, the issue of self-defense. The judge thought the pattern instructions would be too confusing for the jury. Instead, the court gave instructions which detailed the issues for each charge but did not distinguish between the defendants or include the issue of self-defense. The court added one catch-all instruction covering all charges which described what the jury had to find to reject Johnnie B. Wilkerson's claim of self-defense.

It is undisputed that both the IPI issues instructions and the instructions used by the trial court stated the correct law. The only question is. whether the deviation from the approved instructions was justified by the fear of jury confusion.

Whenever an instruction on a subject is to be given,

Rule 451 requires that the trial court give the applicable IPI instruction unless it does not accurately state the law. (73 Ill. 2d R. 451.) The pattern instructions recommend the use of separate instructions when more than one defendant is on trial for the same charge. (IPI Criminal No. 27.03.) As already stated, they also recommend that self-defense, when raised, be handled by an instruction defining the defense and by incorporating the self-defense claim into the issues instruction for the principal offense. (IPI Criminal Nos. 25.05, 25.00 (Introduction).) The trial court departed from the IPI pattern by doing neither.

Each of the deviations from the procedure recommended by IPI has been approved when it was the only deviation. (*People v. Mulford* (1943), 385 Ill. 48, 58 (instructions did not distinguish between defendants); *People v. Kelly* (1956), 8 Ill. 2d 604, 616 (self-defense not required in instruction setting forth the offense if set forth in an accompanying instruction).) But when both deviations occur in one case, the result is a set of jury instructions so confusing that the jury's verdict is suspect and cannot stand.

The value of the form instruction as approved is that it places before the jury, on a single page, for each count against every defendant, a simple list of the decisions it must make to reach its verdict. The elements of the offense, the defenses that have been raised and the burden of proof are there; all that is required of the jury is to run down the list and make its decision in keeping with the other instructions in the case and then to fill out the appropriate verdict form. In a complicated case with several counts and different defendants, there are more pieces of paper when each charge against each defendant is handled on a separate sheet setting forth all the issues raised in that count. But it is less confusing to give the jury several pieces of paper, with one piece for each count, than to force the jury to shuffle back and forth between several general statements of the law. The legal education of the jurors comes from the

instructions, and they should not be forced to take snippets from each of several definitions to form the complete set of instructions needed to dispose of a single count.

Although the trial court was properly concerned with jury confusion, the result of its ruling was to increase confusion. The instructions that were given cast doubt on the integrity of the jury's verdict and should not be repeated at the new trial which is being ordered. See *People v. Jenkins* (1977), 69 Ill. 2d 61.

The defendants have raised several additional issues which merit only a short discussion. Little Johnnie Wilkerson claims that the proof was insufficient to convict him. But if the State's witnesses were believed, the evidence against him was sufficient to prove guilt beyond a reasonable doubt of the crimes charged; the issue of credibility is for the jury. Issues unlikely to recur on retrial, such as defects in discovery, need not now be addressed; likewise, the defendants' sentencing arguments are moot now that their convictions have been reversed. Johnnie B. Wilkerson claims that medical evidence regarding the victims' wounds should not have been admitted because of the overall prejudicial impact, but since the trial court's decision can only be reviewed in the context of all the evidence admitted at trial, resolution of that issue should also await retrial. Finally, the consequences of a shift in position of Little Johnnie Wilkerson's original defense counsel concern us, as they did the appellate court. After serving in that capacity for almost three months, the defense counsel joined the State's Attorney's staff, replacing a recently resigned assistant State's Attorney who upon his resignation was appointed a special prosecutor in this case. Prior to the appointment of the special prosecutor, this case had been handled by the same assistant State's Attorney who was in charge of the case against Katie Bolden. When the defense asked that assistant State's Attorney whether he had assisted

the special prosecutor after the former defense counsel had become an assistant State's Attorney, the special prosecutor's objection was sustained. This was error, for the answer to the question might have revealed that the special prosecutor was assisted by information someone in the State's Attorney's office had received from the former defense counsel. On remand the defendant should be permitted to pursue this inquiry.

The judgments of the appellate court are affirmed.

*Judgments affirmed.*