THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. R.F., Defendant-Appellant.

First District (5th Division)   No. 1—02—3347

Opinion filed February 10, 2005.

NEVILLE, J., dissenting.

Edwin A. Burnette, Public Defender, of Chicago (Janet Stewart, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (John Nowak and Susan Meczyk, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, R.F., appeals his convictions for criminal sexual assault and predatory criminal sexual assault of a child. Defendant contends that: (1) the admission of certain statements by the victim violated his sixth amendment right to confrontation; (2) the State failed to prove him guilty beyond a reasonable doubt; and (3) he was improperly convicted of multiple crimes based upon the same conduct. We affirm defendant's conviction for predatory criminal sexual assault of a child, and with the State's confession of error, we vacate defendant's conviction for criminal sexual assault and correct the mittimus.

█ Prior to trial, the State filed a motion under section 115—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 2000)) to admit the victim's, A.F.'s, statements through her mother M.J. and Investigator Arnold Weddington. Section 115—10 provides that in a prosecution for a sexual act perpetrated against a child under the age of 13, the testimony of the child's out-of-court statements describing any complaint of such act or matter or detail pertaining to any act which is an element of the charged offense is admissible as an exception to the hearsay rule. 725 ILCS 5/115—10(a) (West 2000). Such testimony may only be admitted if the court finds in a pretrial hearing that the time, content and circumstances of the statement provide sufficient safeguards of reliability and the child either testifies at trial or is unavailable as a witness and there is corroborative evidence of the act that is the subject of the statement. 725 ILCS 5/115—10(b) (West 2000).

During the section 115—10 hearing, M.J. testified that she is married to R.F. and that they have a daughter, A.F. At approximately 9:30 p.m. on April 7, 2000, M.J. was giving A.F. a bath in the kitchen sink. A.F. was three years old at the time. After bathing her, M.J. took A.F. out of the sink and began to dry her off. As M.J. dried A.F.'s vaginal area, A.F. began "flinching" and making noises like there was something wrong with her. M.J. asked her what was wrong, and A.F. shrugged her shoulders. A.F. "flinched" a second time, and M.J. again asked her what was wrong. A.F. again made no reply. M.J. asked A.F. a third time what was wrong, and A.F. stated that her daddy had pinched her. M.J. asked A.F. where her daddy had pinched her, and A.F. pointed to her vaginal area.

M.J. testified that she was "shocked" at A.F.'s statement and that she then began dressing A.F. A.F. looked up at M.J. and stated, "mommy, daddy pinched me. Could you please tell daddy to stop pinching me. He's not supposed to touch me. He['s] only supposed to touch you." M.J. then finished dressing A.F. and took her upstairs to M.J.'s mother (A.F.'s grandmother), who lived in the same building. M.J. told A.F. to tell her grandmother what she had said in the kitchen. A.F. stated that "daddy touched my coochy" and she pointed to her vaginal area.

M.J. testified that the next day, April 8, she called the police and took A.F. to the hospital. While alone together in the hospital examination room at approximately 9 p.m., M.J. asked A.F. to tell her again what her dad (defendant) had done to her. A.F. stated that her dad had kissed her. M.J. asked her where he had kissed her, and A.F. pointed to her vaginal area. M.J. testified that on April 9, Officer Weddington came to her home and talked with A.F. A.F. told Officer Weddington that her daddy had put his tongue on her coochy.

Officer Weddington testified that on April 8 he received an assignment involving a child who allegedly had been sexually abused. Officer Weddington went to the hospital and spoke with the doctor and with M.J. Since it was late in the evening, Officer Weddington told M.J. that he would interview A.F. the next day.

Officer Weddington testified that on April 9, he and his partner, Officer Redd, went to M.J.'s house. Officers Weddington and Redd, M.J., and A.F. went into the living room. Officer Weddington introduced himself to A.F. and asked her to tell him her name. A.F. appeared nervous and apprehensive and she hesitated for a few minutes before stating her name. Officer Weddington asked her about colors and numbers, whether she knew the difference between the truth and a story, and whether she could identify parts of her body. A.F. gave appropriate answers to Officer Weddington's preliminary questions.

Officer Weddington testified that he told A.F. that he was there to help her, and he asked her to tell him what she had told her mommy. A.F. responded that her daddy had licked her private part. Officer Weddington asked her to point to her private part, and A.F. then touched her vaginal area. Officer Weddington asked her when this had happened, and A.F. stated "Saturday."

Following the hearing, the trial court ruled that A.F.'s statements to M.J., her grandmother, and Officer Weddington would be admissible at trial.

At the bench trial, the parties stipulated to the testimony of M.J. and Office Weddington from the section 115—10 hearing. In chambers, the State and defense questioned A.F. for the purposes of determining

whether she was available to testify. A.F. responded to some questions and not to others. The trial court found that A.F. was unavailable to testify due to her fear and anxiety.

Officer Weddington testified at trial that he spoke with defendant at the police station on April 10. After defendant was advised of his *Miranda* rights, he denied A.F.'s allegations. On April 11, Officer Weddington met with defendant and again advised him of his *Miranda* rights. Defendant told Officer Weddington that he went out with friends to drink after work one night. After arriving home, A.F. came to him and stated that she was itching. Defendant asked her where she was itching, and A.F. pointed to her vagina. Defendant told A.F. to go in the other room and he would be with her in a minute. Approximately five minutes later he went into the room, and A.F. again stated that her vagina was itching. Defendant stated that he kissed A.F.'s vagina to make it better, then he licked A.F.'s vagina. Defendant realized what he was doing was wrong, went back into his bedroom, and prayed for forgiveness.

Officer Weddington testified that between 10 and 11 p.m., Assistant State's Attorney (ASA) Daniel Tiernan met with defendant and that defendant repeated his inculpatory statement.

ASA Tiernan testified that he met with defendant at approximately 10 p.m. on April 11. ASA Tiernan gave defendant his *Miranda* rights, and defendant made a handwritten statement in which he admitted that approximately two weeks earlier, he had some beers after work and then returned home. A.F. told defendant that her belly hurt, and defendant told her to go back to her room and lie down. A few minutes later, defendant went into A.F.'s room and rubbed her belly and told her to go to sleep. Defendant went back to his bedroom. Approximately five minutes later, A.F. came in and told defendant that she was itching and pointed to her vagina. Defendant told A.F. to go to her room and lie down. A.F. called to him again, so defendant went into her room and A.F. told him that she was itching. Defendant told A.F. that he would kiss her vagina to make it feel better. A.F.'s panties were already around her ankles, and defendant began kissing A.F. on her lower belly and eventually started kissing her vagina. While he was kissing her vagina, his tongue "came out" and he licked her vagina. Defendant then got up and went back to his bedroom.

Defendant testified at trial and denied ever rubbing, kissing, or licking A.F.'s vagina. Defendant testified that he gave a confession at the police station because Officer Weddington told him that he could go home if he confessed.

The court convicted defendant of predatory criminal sexual assault of a child and criminal sexual assault and sentenced him to six years' imprisonment. Defendant filed this timely appeal.

First, defendant argues that A.F.'s statements to her mother, grandmother, and Officer Weddington constituted testimonial evidence and that their admission at trial, in the absence of an opportunity to cross-examine A.F., violated his sixth amendment constitutional right of confrontation. In support, defendant cites *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The State responds that defendant waived review of this issue by failing to raise his sixth amendment argument at trial or in his posttrial motion. Our supreme court has held that judicial opinions announcing new constitutional rules applicable to criminal cases are retroactive to all cases, such as this one, pending on direct review at the time the new constitutional rule is declared. *People v. Ford*, 198 Ill. 2d 68, 72-73 (2001); *People v. Thompson*, 349 Ill. App. 3d 587, 594 (2004); *People v. Martinez*, 348 Ill. App. 3d 521, 533 (2004). Accordingly, there was no waiver here.

In *Crawford*, the State of Washington charged Crawford with assault and attempted murder after stabbing a man who allegedly had attempted to rape Crawford's wife. At trial, the State introduced a tape-recorded statement Crawford's wife made to police during her interrogation shortly after the stabbing. Crawford's wife invoked the State's marital privilege and did not testify at trial. The jury convicted Crawford of assault. *Crawford*, 541 U.S. at 38-41, 158 L. Ed. 2d at 184-86, 124 S. Ct. at 1356-58.

Upon appeal to the United States Supreme Court, Crawford argued that the State's use of his wife's statement violated the sixth amendment's confrontation clause, which provides that " '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.' " *Crawford*, 541 U.S. at 42, 158 L. Ed. 2d at 187, 124 S. Ct. at 1359, quoting U.S. Const., amend VI. The Supreme Court noted that under *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980), an unavailable witness's out-of-court statement satisfied sixth amendment scrutiny, and was admissible at trial, as long as it had "adequate indicia of reliability," *i.e.*, it fell within a " 'firmly rooted hearsay exception' " or bore " 'particularized guarantees of trustworthiness.' " *Crawford*, 541 U.S. at 42, 158 L. Ed. 2d at 187, 124 S. Ct. at 1359, quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980). Crawford urged the Court to reconsider the *Ohio v. Roberts* test, arguing that it strayed from the original meaning of the confrontation clause. *Crawford*, 541 U.S. at 42, 158 L. Ed. 2d at 187, 124 S. Ct. at 1359.

The Court began its analysis by tracing the history behind the confrontation clause. The Court noted that in the sixteenth and seventeenth centuries, judicial officers routinely conducted pretrial,

private examinations of suspects and witnesses, and the examinations were read in court in lieu of trial testimony, despite protests by the accused for the opportunity to confront his accusers. Eventually, English law developed a right of confrontation that limited these abuses, and America's first Congress included the confrontation clause in the proposal that became the sixth amendment. *Crawford*, 541 U.S. at 42-49, 158 L. Ed. 2d at 187-91, 124 S. Ct. at 1359-63.

The Court concluded from the historical record that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford*, 541 U.S. at 50, 158 L. Ed. 2d at 192, 124 S. Ct. at 1363. The Court noted that the confrontation clause applies to "witnesses" against the accused, with "witnesses" being defined as those who " 'bear testimony.' " *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 192, 124 S. Ct. at 1364, quoting 1 N. Webster, An American Dictionary of the English Language (1828). The Court defined "testimony" as a " 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 192, 124 S. Ct. at 1364, quoting 1 N. Webster, An American Dictionary of the English Language (1828).

■ The Court further concluded from the historical record that "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53-54, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365. The Court explained that *Ohio v. Roberts*, which allowed for the admission of pretrial testimonial statements based upon "indicia of reliability" other than prior cross-examination, clashed with the core meaning of the confrontation clause. *Crawford*, 541 U.S. at 60, 158 L. Ed. 2d at 198, 124 S. Ct. at 1369. The Court noted that "reliability" is an amorphous, if not entirely subjective, concept, that there are "countless" factors bearing on whether a statement is reliable, and that whether a statement is deemed reliable depends on which factors the judge considers and how much weight he accords them. *Crawford*, 541 U.S. at 63, 158 L. Ed. 2d at 200, 124 S. Ct. at 1371. Accordingly, the Court held that the "indicia of reliability" framework "is so unpredictable that it fails to provide meaningful protection from even core confrontation violations." *Crawford*, 541 U.S. at 63, 158 L. Ed. 2d at 200, 124 S. Ct. at 1371. The Court further noted that the "unpardonable vice of the [*Ohio v. Roberts*] test *** is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to

exclude." *Crawford*, 541 U.S. at 63, 158 L. Ed. 2d at 200, 124 S. Ct. at 1371. Accordingly, the Court abandoned the *Ohio v. Roberts* reliability framework in relation to testimonial statements, holding that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. If a statement is not testimonial, however, the *Ohio v. Roberts* framework still applies.

The issue, then, is what constitutes a "testimonial statement." Unfortunately, the Court "[left] for another day any effort to spell out a comprehensive definition of 'testimonial' " (*Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374), despite Justice Rehnquist's apt warning in his concurring opinion that the thousands of federal and state prosecutors need answers "now, not months or years from now," as to what type of statements are covered by the new rule. *Crawford*, 541 U.S. at 75, 158 L. Ed. 2d at 207, 124 S. Ct. at 1378 (Rehnquist, C.J., concurring, joined by O'Connor, J.). The Court did quote several formulations of what the core class of "testimonial" statements *might* include, specifically, " 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially' " (*Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364, quoting Brief for Petitioner at 23); " 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions' " (*Crawford*, 541 U.S. at 51-52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364, quoting *White v. Illinois*, 502 U.S. 346, 365, 116 L. Ed. 2d 848, 865, 112 S. Ct. 736, 747 (1992); and " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' " (*Crawford*, 541 U.S. at 52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364, quoting Brief for National Association of Criminal Defense Lawyers *et al.* as Amici Curiae at 3). The Court did not explicitly endorse any of these formulations; rather, the Court held that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

Importantly, *Crawford* repeatedly emphasized the significance of governmental involvement in determining whether a hearsay state-

ment is testimonial. Specifically, the Court noted that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement." *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 192-93, 124 S. Ct. at 1364. Further, in holding that a statement taken in the course of a police interrogation is testimonial, the Court noted that "[p]olice interrogations bear a striking resemblance to examinations by justices of the peace in England" (*Crawford*, 541 U.S. at 52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364) and that the "involvement of government officers in the production of testimonial evidence presents the same risk [of violating the confrontation clause], whether the officers are police or justices of the peace." *Crawford*, 541 U.S. at 53, 158 L. Ed. 2d at 194, 124 S. Ct. at 1365. The Court further noted, in response to Justice Rehnquist's questioning of the propriety of its holding, that "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse." *Crawford*, 541 U.S. at 56 n.7, 158 L. Ed. 2d at 196 n.7, 124 S. Ct. at 1367 n.7). Finally, the Court noted that not every inculpating statement runs afoul of the confrontation clause; rather, it is only those inculpating statements "given in a testimonial setting," *e.g.*, as a result of some type of governmental involvement, that "trigger" the clause's demands. *Crawford*, 541 U.S. at 65, 158 L. Ed. 2d at 201, 124 S. Ct. at 1372.

■ Thus, *Crawford* applies only to statements made to governmental officials; *Crawford* does not apply to statements made to nongovernmental personnel, such as family members or physicians. When an out-of-court statement is made to nongovernmental personnel and, thus, is nontestimonial, the "indicia of reliability" framework of *Ohio v. Roberts*, and the hearsay exception set forth in section 115—10, continue to apply.

■ Having laid the framework of the *Crawford* analysis, we now examine the specific hearsay statements at issue in the present case. The court admitted hearsay statements A.F. made to her mother and grandmother in which she accused defendant of pinching and kissing her vaginal area. As these statements were made to family members and not to governmental personnel, they were not "testimonial" under *Crawford*; accordingly, the "indicia of reliability" framework set forth in *Ohio v. Roberts*, and the hearsay exception set forth in section 115—10, govern whether these statements were properly admissible. Defendant does not argue that the trial court erred in determining,

after holding the section 115—10 hearing, that A.F.'s statements to her mother and grandmother were reliable. Accordingly, we affirm the admission of A.F.'s hearsay statements to her mother and grandmother.

■ The trial court also admitted A.F.'s statement to Officer Weddington, in which she accused defendant of licking her vaginal area. As discussed above, the *Crawford* Court held that statements taken by police officers in the course of an interrogation are considered testimonial. Further, according to *Crawford*, the term "interrogation" is viewed in a colloquial, rather than any technical legal sense. *Crawford*, 541 U.S. at 53 n.4, 158 L. Ed. 2d at 194 n.4, 124 S. Ct. at 1365 n.4. In determining whether a statement made to police officers was testimonial, the inquiry centers on whether the officer involved was acting in an investigative capacity for the purpose of producing evidence in anticipation of a criminal prosecution. See *People v. West*, 355 Ill. App. 3d 28 (2004). If the officer was acting in such a capacity when the statement was made, then the statement is considered testimonial in nature.

The evidence at the section 115—10 hearing establishes that on April 8, 2000, Officer Weddington was assigned to A.F.'s case and went to the hospital and spoke with A.F.'s mother. The next day, he and Officer Redd went to A.F.'s house. Officer Weddington told A.F. that he was there to help her, asked her a number of preliminary questions, and then asked her to repeat what she had told her mother. A.F. responded that defendant had licked her private part and she pointed to her vaginal area. Clearly, Officer Weddington was acting in an investigative capacity for the purposes of producing evidence in anticipation of a criminal prosecution when he questioned A.F. Accordingly, A.F.'s statement to Officer Weddington was testimonial under *Crawford* and should not have been admitted in the absence of cross-examination.

Constitutional error may be harmless beyond a reasonable doubt where overwhelming other evidence supports the conviction. *People v. Wilkerson*, 87 Ill. 2d 151, 157 (1981). Here, the properly admitted hearsay statements made by A.F. to her mother and grandmother, in which she detailed how defendant pinched and kissed her vaginal area, coupled with defendant's oral and written confession that he kissed and licked A.F.'s vagina, were overwhelming other evidence supporting defendant's conviction. Accordingly, the admission of A.F.'s statement to Officer Weddington was harmless beyond a reasonable doubt.

■ Next, defendant argues that the State failed to prove him guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any

rational trier of fact could have found all the elements of the crime were proven beyond a reasonable doubt. *People v. Becker*, 315 Ill. App. 3d 980, 1003 (2000).

A person commits predatory criminal sexual assault of a child if he is at least 17 years old and commits an act of sexual penetration with a victim who was under the age of 13 when the act was committed. 720 ILCS 5/12—14.1 (West 2000). Sexual penetration is defined as "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." 720 ILCS 5/12—12(f) (West 2000).

Defendant testified at trial that he was 29 years of age. As discussed above, A.F.'s statements to her mother and grandmother, coupled with defendant's confession, were sufficient to establish that defendant kissed and licked his three-year-old daughter's vagina. Accordingly, the evidence was sufficient to convict defendant of predatory criminal sexual assault of a child.

■ Finally, defendant argues, and the State agrees, that he was improperly convicted of multiple crimes based upon the same conduct and that the mittimus improperly reflects a conviction for criminal sexual assault. We agree. Accordingly, we vacate the conviction for criminal sexual assault and correct the mittimus to reflect only a conviction for predatory criminal sexual assault of a child.

For the foregoing reasons, we affirm defendant's conviction for predatory criminal sexual assault of a child, vacate his conviction for criminal sexual assault and correct the mittimus.

Affirmed in part and vacated in part; mittimus corrected.

GALLAGHER, J., concurs.

JUSTICE NEVILLE, dissenting:

The majority cites *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), as authority for its decision, but the majority misconstrued and failed to follow the holding of *Crawford* when it affirmed the defendant's conviction and predicated his conviction on the extrajudicial statements of a three-year-old minor. The minor's statements were admitted into evidence through her mother and a police investigator but the minor was never subjected to cross-examination. Therefore, because the majority failed to follow *Crawford*, I respectfully dissent from the majority's decision.

In this case, the majority affirmed the defendant's conviction for predatory sexual assault of a child. The majority's decision violates *Crawford* because the trial court predicated the defendant's conviction on a three-year-old minor's extrajudicial statements which the trial court found to be "reliable." Prior to the trial, the State filed a pretrial motion for a hearing pursuant to section 115—10 of the Code of Criminal Procedure. The State's motion requested that the trial court examine the "time, content and circumstances" of the three-year-old minor's statements to her mother and a police investigator to determine if the statements were sufficiently "reliable" to be admitted into evidence. After a hearing where the three-year-old minor's mother and the investigator testified, the trial court considered the statements (daddy kissed me, pinched me and touched me) attributed to the three-year-old minor by her mother and the investigator and found the three-year-old minor's hearsay statements "reliable." When trying to determine if the three-year-old minor was available to testify, the trial judge stated "I don't generally feel that a five year old is competent to testify anyway." Then the trial judge stated that he was unable to find the three-year-old "competent" or "incompetent," just unavailable. At the trial, the parties stipulated to the three-year-old minor's extrajudicial statements that were admitted into evidence through her mother and the police investigator at the section 115—10 hearing, and the defendant was convicted and sentenced to the Illinois Department of Corrections.

The record establishes that the trial court admitted the three-year-old minor's statements pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 2000)). Section 115—10 provides that in a prosecution for a sexual act perpetrated *against a child under the age of 13, the testimony of the child's out-of-*court statements describing any complaint of such act or matter or detail pertaining to such act is an element of the charged offense and is admissible as an exception to the hearsay rule. 725 ILCS 5/115—10 (West 2000). It should be noted, however, that section 115—10 provides that such testimony is only admissible (1) if the court finds at a pretrial hearing that the time, content and circumstances of the statement provide sufficient safeguards of reliability, and (2) if the child either testifies at trial or is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement. 725 ILCS 5/115—10 (West 2000). The three-year-old minor's extrajudicial statements were admitted in evidence after a hearing where the trial court found them reliable and the witness was found to be unavailable.

Section 115—10, an Illinois exception to the hearsay rule, flies in

the face of *Crawford*. The *Crawford* Court rejected reliability as the test for determining whether hearsay was admissible, and replaced its prior reliability test with a cross-examination or confrontation test. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The *Crawford* Court specifically stated:

"[W]e do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence much less to amorphous notions of 'reliability.' *** Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence ***. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370.

*Crawford* makes it clear that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68-69, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374.

In my view, *Crawford* requires courts to use hearsay rules that predicate the admissibility of extrajudicial statements on a cross-examination or confrontation test. *In re E.H.*, 355 Ill. App. 3d 564, 572-75 (2005). Section 115—10 of the Code of Criminal Procedure violates *Crawford* by predicating the admissibility of extrajudicial statements on a reliability test. See *In re E.H.*, 355 Ill. App. 3d at 576-77. Therefore, section 115—10 of the Code of Criminal Procedure is unconstitutional because it violates *Crawford* by employing a reliability test to determine if extrajudicial statements are admissible. See *In re E.H.*, 355 Ill. App. 3d at 576-77. Consequently, the majority erred by affirming R.F.'s conviction because it was based on a three-year-old minor's extrajudicial statements which were admitted in evidence and found to be reliable pursuant to an unconstitutional statute (725 ILCS 5/115—10 (West 2000)). See *In re E.H.*, 355 Ill. App. 3d at 576-77. The majority also holds that *Crawford* applies to statements made to governmental officials, but does not apply to statements made to nongovernmental personnel, such as family members or physicians. 355 Ill. App. 3d at 1000. Therefore, according to the majority, the mother's testimony regarding the minor's extrajudicial statements was not "testimonial" and was admissible, but the investigator's testimony regarding the same extrajudicial statements made by the minor was testimonial but was inadmissible. 355 Ill. App. 3d at 1001.

*Crawford* leaves some uncertainty regarding the exact definition of "testimonial" statements. *Crawford* makes it clear, however, that

certain types of hearsay statements, *i.e.*, "[a]n offhand, overheard remark," may not qualify as statements at which the confrontation clause was directed, but it does apply against "those who 'bear testimony.' " *Crawford*, 541 U.S. at 51, 158 L. Ed. 2d at 192, 124 S. Ct. at 1364. Here, the three-year-old minor bore accusatory testimony because her extrajudicial statements were offered in court by her mother and the investigator to prove the truth of the matter asserted, specifically, that her father sexually assaulted her.

In my view, when determining whether extrajudicial statements are testimonial and subject to the confrontation clause, the focus should be on the "nature of the testimony" and whether it implicates the defendant in a crime and not on "the official or unofficial nature" of the person whom the State wants to testify to the declarant's extrajudicial statements. See *In re E.H.*, 355 Ill. App. 3d at 575; *In re T.T.*, 351 Ill. App. 3d 976, 993 (2004). The minor in this case bore testimony whether her extrajudicial statements, which implicated the defendant in a crime, were introduced in evidence through her mother or the police officer. More importantly, since the minor's extrajudicial statements were not tested under the crucible of cross-examination, they should have been excluded from evidence and should not have been used to convict the defendant. *Crawford*, 541 U.S. at 51-52, 158 L. Ed. 2d at 193, 124 S. Ct. at 1364.

In conclusion, the majority erred when it affirmed the defendant's conviction in this case because the minor's extrajudicial statements were used as evidence against the defendant after being admitted pursuant to an unconstitutional statute (725 ILCS 5/115—10 (West 2000)). The majority also erred in this case by finding that the minor's mother's testimony was nontestimonial, in spite of the fact the minor bore testimony when her extrajudicial statements were repeated in court by her mother and were used to convict her father. The minor's extrajudicial statements were admitted into evidence without being tested under the crucible of cross-examination. Therefore, it is my considered opinion that *Crawford* was violated in this case, and I respectfully dissent from the majority's decision.